||UNITED STATES DISTRICT COURT|
|---|---|
||DISTRICT OF NEVADA|

| | |
|---|---|
| United States of America,<br><br>        Respondent/Plaintiff<br><br>v.<br><br>Barry Addison Gray,<br><br>        Petitioner/Defendant | Case No.: 2:95-cr-00324-JAD<br><br>**Order Granting Petitioner's Motion for Reconsideration but Denying His § 2255 Motion to Vacate Sentence**<br><br>[ECF Nos. 35, 38] |

When Barry Addison Gray was sentenced for bank robbery with a weapon after his 1996 guilty plea, the district judge found that he qualified as a career offender under the United States Sentencing Guidelines § 4B1.2(a)(2) (the "residual clause") and sentenced him to 235 months in prison. More than 20 years later, Gray moved to vacate his sentence under 28 U.S.C. § 2255, arguing that the Supreme Court's 2015 decision in *Johnson v. United States*[1]—which ruled that the residual clause in the Armed Career Criminal Act (ACCA) is unconstitutional—invalidates the identical residual clause in the Guidelines. I stayed briefing while the Supreme Court considered *Beckles v. United States*,[2] in which it ultimately held that the advisory Guidelines are not subject to the same void-for-vagueness challenges that invalidated the ACCA's residual clause.

After I lifted the stay, I denied Gray's petition, ruling that *Beckles* defeated his claim.[3] Gray now moves for reconsideration. He contends that *Beckles* is limited to the *advisory* Guidelines, and because he was sentenced long ago while the Guidelines were *mandatory*, *Beckles* doesn't apply. I ordered supplemental briefs addressing whether Gray's prior convictions qualify him as a career offender under Guidelines § 4B1.2(a)(1) (the force clause) or

---

[1] *Johnson v. United States*, 135 S. Ct. 2551 (2015).

[2] *Beckles v. United States*, 137 S. Ct. 886 (2017).

[3] ECF No. 37.

1

the remainder of § 4B1.2(a)(2) (the enumerated-offenses clause).  Having now reviewed those briefs, I find that *Beckles* doesn't apply to Gray's petition, so I grant his motion for reconsideration.  Although he wins that battle, he loses the war.  Because Gray's instant offense and his prior convictions for Tennessee armed robbery qualify as crimes of violence under the Guidelines' force clause, I ultimately deny his § 2255 motion to vacate his sentence.[4]

## Background

In 1996, Gray pled guilty to one count of federal bank robbery with a weapon under 18 U.S.C. § 2113(a) and (d).[5]  His list of prior offenses is extensive, so I focus on the ones at issue here.  In 1980, Gray was convicted by a jury of armed robbery in Tennessee and sentenced to ten years in prison.[6]  In 1985, he was convicted of two counts of Tennessee armed robbery and one count of aggravated assault.[7]  For the robbery offenses, Gray received two life sentences as a habitual criminal.[8]  He was also sentenced to a 10-year sentence for the aggravated-assault conviction to run consecutive to his life sentences.[9]  He later escaped from Tennessee's custody, and a warrant for his arrest was outstanding when he was sentenced in this case.[10]  In 1989, Gray picked up another armed-robbery conviction, this time in Florida, for which he received a life sentence.[11]

---

[4] Because this motion turns on legal questions and does not require the resolution of disputed facts, I find it suitable for disposition without a hearing.  *See Raines v. United States*, 423 F.2d 526, 529 (4th Cir. 1970) (holding that it is within a district court's discretion to address purely legal issues under § 2255 without a hearing).

[5] Gray's Presentence Investigation Report (PSR), ECF No. 50 at 1.

[6] *Id.* at 7.

[7] *Id.* at 8.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

2

In Gray's presentence report, probation concluded that his 1980 and 1985 Tennessee armed-robbery convictions and his Florida armed-robbery conviction constituted prior violent felony convictions under § 4B1.1, so Gray qualified for a career-offender enhancement. The report calculated Gray's guideline range as 188-235 months in custody, based on a total offense level of 31 and a criminal history category of VI.[12] According to Gray, without the career-offender enhancement, his guideline range would have been 120-150 months based on a total offense level of 27 and criminal history category of V.[13] The sentencing judge imposed the maximum sentence of 235 months.[14]

## Discussion

### A. Legal landscape

In *Johnson*, the Supreme Court tested the constitutionality of the residual clause of 18 U.S.C. § 924(e), known as the Armed Career Criminal Act (ACCA). Under the ACCA, "a defendant convicted of being a felon in possession of a firearm faces more severe punishment if he has three or more previous convictions for a 'violent felony,' a term defined to include any felony that 'involves conduct that presents a serious potential risk of physical injury to another.'"[15] The High Court evaluated the clause's violent-felony definition using the "framework known as the categorical approach," which "assesses whether a crime qualifies as a violent felony 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.'"[16] It concluded that "the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates"

---

[12] *Id.* at 5–6, 9.

[13] ECF No. 35 at 3.

[14] ECF No. 16.

[15] *Johnson*, 135 S. Ct. at 2555 (quoting 18 U.S.C. § 924(e)(2)(B)).

[16] *Id.* at 2557 (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)).

and held it void for vagueness.[17]  In *Welch v. United States*, the Supreme Court held that *Johnson* created a new substantive rule that applies retroactively to cases on collateral review.[18]

While *Johnson* answered one question, it prompted a flood of others.  Many federal statutes, as well as the Guidelines at issue here, have language that is substantially similar or identical to the ACCA's now-invalid residual clause.  Relying on *Johnson*, federal prisoners throughout the country fled to the courts to challenge sentences imposed under similar clauses.

*Beckles* is one such case.  In it, the petitioner challenged a 2007 sentence that was enhanced under the identical residual clause in the Guidelines, contending that the clause was void after *Johnson*.[19]  The Supreme Court explained that two types of criminal laws are subject to void-for-vagueness challenges: "laws that *define* criminal offenses and laws that *fix the permissible sentences* for criminal offenses."[20]  But the *advisory* Guidelines that Beckles was sentenced under didn't *fix* criminal sentences because judges have discretion to depart from the Guidelines and consider other factors to determine appropriate sentence ranges.[21]  The Court held that the advisory Guidelines are therefore not subject to void-for-vagueness challenges.

The Supreme Court expanded its *Johnson* holding to immigration law this term in *Sessions v. Dimaya*.[22]  The petitioner challenged 18 U.S.C. § 16(b), a section of the Immigration and Naturalization Act (INA) containing a residual clause that is virtually identical to the clause struck down in *Johnson*.  The Court determined that a "straightforward application" of *Johnson* necessitated that § 16(b) also be invalidated.

---

[17] *Id.* at 2558.

[18] *Welch v. United States*, 136 S. Ct. 1257 (2016).

[19] *Beckles*, 137 S. Ct. at 890.

[20] *Id.* at 892 (emphasis in original).

[21] *Id.* at 894–95.

[22] *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018).

4

**B.    *Beckles* does not foreclose Gray's petition.**

The parties dispute whether *Beckles* controls this case. Gray contends that it doesn't because he was sentenced prior to 2005, when the Supreme Court, in *Booker v. United States*, ruled that the then-mandatory Guidelines were incompatible with the Sixth Amendment.[23] Because *Beckles* relied on the advisory nature of the Guidelines to determine that they were not subject to void-for-vagueness challenges, Gray argues that his challenge to the mandatory Guidelines does not suffer from the same infirmities. The government disagrees, arguing that the analysis in *Beckles* is equally applicable to the pre-*Booker* mandatory guidelines. As support, it cites to Eleventh Circuit precedent holding that the mandatory Guidelines are not subject to *Johnson* challenges.

In *In re Griffin*, the Eleventh Circuit held that "[t]he Guidelines—whether mandatory or advisory—cannot be unconstitutionally vague because they do not establish the illegality of any conduct and are designed to assist and limit the discretion of the sentencing judge."[24] The Eleventh Circuit also pointed out that regardless of whether the Guidelines are advisory or mandatory, "the district court, even without the invalidated residual clause, could still impose a sentence within the same statutory penalty range and indeed the same sentence as before. In fact, in former mandatory guideline cases, the resentencing would be under an even more discretionary advisory system that would permit the district court to impose the same sentence."[25]

I decline to adopt the Eleventh Circuit's reasoning. In *Beckles*, the Supreme Court made clear that vagueness challenges are applicable to laws that fix criminal sentences.[26] *Beckles*'s

---

[23] *Booker v. United States*, 543 U.S. 220 (2005).

[24] *In re Griffin*, 823 F.3d 1350, 1354 (11th Cir. 2016); *see also Lewis v. United States*, 2018 WL 2128612, at *1 (11th Cir. May 8, 2018) (affirming that *Beckles* doesn't alter the court's conclusion in *In re Griffin*); *but see In re Sapp*, 827 F.3d 1334, 1336–41 (11th Cir. 2016) (Circuit Judges Jordon, Rosenbaum, and Pryor specially concurring in a judgment denying a § 2255 motion to explain why they "believe *In re Griffin* is deeply flawed and wrongly decided").

[25] *Id.* at 1355.

[26] *Beckles*, 137 S. Ct. at 892.

finding that the advisory guidelines did not "fix" criminal sentences expressly depended on the fact that judges applying the advisory Guidelines had discretion to depart from them and were required to consider non-Guideline factors when imposing their sentences. That discretion did not exist pre-*Booker*, when the Guidelines were considered mandatory.[27] The same analysis applies here. Because the pre-*Booker* Guidelines were "mandatory and binding on all judges" and had "the force and effect of laws,"[28] they effectively fixed criminal sentences and are therefore subject to vagueness challenges, like this one that Gray now raises.

The Ninth Circuit recognized before *Booker* that the Sentencing Guidelines could be challenged on vagueness grounds.[29] While *Beckles* has muddled up the law in this area, it did not clearly invalidate Ninth Circuit precedent allowing Gray's challenge. So, I find that *Beckles* is not dispositive of Gray's § 2255 motion. I therefore grant his motion for reconsideration of my prior ruling, vacate that order, and evaluate the merits of his petition.

**C.    Gray's petition is timely.**

Before I get to the petition's merits, I must address the government's contention that Gray's petition is untimely. Gray filed his petition under the authority of 28 U.S.C. § 2255(f)(3), which starts a one-year statute of limitations period from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." [30] Gray contends that the right he asserts stems from *Johnson*, which was made retroactive to cases on collateral review in *Welch*.

---

[27] *Booker*, 542 U.S. at 234.

[28] *Id.* at 233–34.

[29] *See United States v. Johnson*, 130 F.3d 1352 (9th Cir. 1997) ("Unconstitutional vagueness challenges to the Sentencing Guidelines have been questioned as theoretically unsound . . . but we have countenanced such challenges in deference to the Supreme Court's declaration that 'vague sentencing provisions may pose constitutional questions if do not state with sufficient clarity the consequences of violating a given criminal statute.'") (quoting *United States v. Batchelder*, 442 U.S. 114, 123 (1979)).

[30] 28 U.S.C. § 2255(f)(3).

The government disagrees. It asks me to narrowly interpret the right established in *Johnson* as the right to challenge sentences imposed under the ACCA's residual clause—not to sentences imposed under identical language. The government contends that Justice Sotomayor's concurrence in *Beckles* acknowledging that the majority left open the question of whether vagueness challenges may be brought against mandatory Guidelines means that the Supreme Court could not have recognized a new right to challenge them.[31]

But the Supreme Court's approach in *Dimaya*—when it struck down the INA's residual clause—indicates that the answer is not as simple as the government suggests. Writing for the majority of the Court, Justice Kagan explained that "*Johnson* is a straightforward decision, with equally straightforward application" to the INA.[32] The High Court found that the INA's residual clause suffered from the same infirmities as the ACCA's under the same analysis.[33] While the *Dimaya* Court did not have to grapple with the extra procedural challenges imposed by AEDPA (it was decided on direct appeal) the decision does at least tacitly suggest that *Johnson*'s substantive rule is broader than its narrow holding that the ACCA's residual clause is unconstitutional.

I am persuaded by the analysis of Fourth Circuit Judge Gregory, who dissented in *United States v. Brown*, a case holding that the right to challenge the mandatory Guidelines is different from the right to challenge the ACCA's residual clause under *Johnson*.[34] "A newly recognized right," he explained, "is more sensibly read to include the reasoning and principles that explain

---

[31] ECF No. 39 at 5 (citing *Beckles*, 137 S. Ct. at 903 n.4 ("The Court's adherence to the formalistic distinction between mandatory and advisory rules at least leaves open the question whether the defendants sentenced to terms of imprisonment before our decision in *Booker*—that is, during the period in which the Guidelines did fix the permissible range of sentences—may mount vagueness attacks on their sentences.") (Sotomayor, J., concurring) (citations and internal quotations omitted)).

[32] *Dimaya*, 138 S. Ct. at 1213.

[33] *Id.*

[34] *United States v. Brown*, 868 F.3d 297 (2017).

7

it."[35]  I am also persuaded by the fact that the Ninth Circuit has consistently analyzed the
ACCA's residual clause and the Guidelines' residual clause identically.[36]  It would be illogical to
treat the right to challenge the ACCA's residual clause differently from the right to challenge the
same clause in the mandatory Guidelines when they both fix sentences in the same manner.

So, I conclude that Johnson created a new, retroactive right that Gray can rely on to
challenge his conviction.[37]  Because he filed his petition within one year of *Johnson*, Gray's
challenge is timely.  I thus turn to the merits of that challenge.

**D.    Guideline § 4B1.2(1)(ii) is void for vagueness.**

The Guidelines' residual clause suffers from the same constitutional infirmities as the
ACCA's.  Because the pre-*Booker* guidelines had the force and effect of law and narrowly
prescribed when a judge could depart from the Guidelines, those Guidelines dictated fixed
sentencing ranges that judges were required to impose.  The same factors leading the Supreme
Court to determine that the residual clauses in the ACCA and the INA are unconstitutional are
equally applicable here.  So, I conclude that the residual clause of the United States Sentencing

---

[35] *Id.* at 304.

[36] *See United States v. Robinson*, 869 F.3d 933, 937 n.5 (9th Cir. 2017) (citing *United States v. Ladwig*, 432 F.3d 1001, 1005 n.9 (9th Cir. 2005)).

[37] I previously held that a petitioner's *Johnson* challenge of a sentence imposed under 18 U.S.C. § 924(c), which included another residual clause similar to the ACCA's, stemmed from the new right created in *Johnson*. *United States v. Bonaparte*, 2017 WL 3159984, at *2 (D. Nev. July 25, 2017).  I also recognize that a substantial number of courts, including some circuit courts and district courts in this circuit, have held that *Johnson* did not create a new right to challenge sentences imposed under the mandatory Guidelines. *See, e.g., Brown*, 868 F.3d at 310; *Raybon v. United States*, 867 F.3d 625, 630 (6th Cir. 2017); *United States v. Greer*, 881 F.d 1241, 1247 (10th Cir. 2018), *petition for cert. filed*, No. 17-8775; *United States v. Patrick*, 2017 WL 4683929, at *2–6 (D. Or. Oct. 18, 2017); *Fox v. United States*, 2018 WL 650200, at *6 (D. Haw. Jan. 31, 2018); *United States v. Gildersleeve*, 2017 WL 5895135, at *3 (D. Or. Nov. 28, 2017); *Mitchell v. United States*, 2017 WL 2275092, at *3–5 (W.D. Va. May 24, 2017).  I am not persuaded by these non-binding authorities and find the opinions in the minority more convincing. *See, e.g., Cross v. United States*, -- F.3d --, 2018 WL 2730774, at *3 (7th Cir. June 7, 2018) (holding that *Johnson* established "a right not to have his sentence *dictated* by the unconstitutionally vague language of the mandatory residual clause," and because petitioners' challenges to sentences imposed under the mandatory Guidelines "assert precisely that right," their § 2255 motions were timely); *United States v. Meza*, 2018 WL 2048899, at *5-6 (D. Mont. May 2, 2018) (holding that *Johnson* created a new right to challenge residual clause under 18 U.S.C. § 924(c)); *United States v. Savage*, 231 F. Supp. 3d 542, 569–74 (C.D. Cal. 2017) (holding, pre-*Beckles*, that a vagueness challenge to the Guidelines asserts the new right created in *Johnson*).

8

Guidelines, as applied when they were mandatory, is unconstitutional under *Johnson*.[38] Unfortunately for Gray, however, that conclusion affords him no relief because his crimes—the federal-bank-robbery offense that underlies this conviction and his convictions for Tennessee armed robbery—qualify as violent ones under the Guidelines' force clause.

**E.  Gray's offenses are crimes of violence under the force clause.**

    **1.  Legal standard**

A defendant qualifies for a career-offender enhancement under the Guidelines if he is at least 18 years old at the time of the instant offense, the instant offense is a qualifying felony, and he had at least two prior qualifying felony convictions.[39] A felony is a qualifying one if it is a crime of violence under § 4B1.2(a)(1) (the force clause) or the remainder of § 4B1.2(a)(2) (the enumerated-offenses clause).

The still-valid force clause[40] in the Guidelines defines a crime of violence as one that "has as an element the use, attempted use, or threatened use of physical force against the person of another."[41] In *Johnson*, the High Court evaluated the ACCA's identical force clause definition using the categorical approach. Under the categorical approach, courts look only to the statutory elements of the offense and do not consider the defendant's conduct in a particular case.[42] "If the statute of conviction 'sweeps more broadly than the generic crime, a conviction under that law cannot count as [a qualifying] predicate, even if the defendant actually committed

---

[38] *See, e.g., United States v. Mock*, 2017 WL 2727095, at *3-4 (E.D. Wash. June 23, 2017) (applying *Johnson* to mandatory Guidelines); *Cheers v. United States*, 269 F. Supp. 3d 773, 777 (N.D. Miss. 2017) (same); *Reid v. United States*, 2017 WL 2221188, at *4 (D. Mass. May 18, 2017) (holding that the mandatory Guidelines are unconstitutionally vague; *United States v. Parks*, 2017 WL 3732078 at *5–6 (D. Colo. Aug. 1, 2017) (same).

[39] U.S.S.G. § 4B1.1(a).

[40] Neither party contends that Gray's offenses qualify as crimes of violence under the enumerated-offenses clause, so I focus on the force clause.

[41] U.S.S.G. § 4B1.2(a)(1).

[42] *Johnson*, 135 S.Ct. at 2557 ("Under the categorical approach, a court assesses whether a crime qualifies as a violent felony 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.'") (quoting *Begay*, 553 U.S. at 141).

9

the offense in its generic form.'"⁴³  The Ninth Circuit has held that "the definition of a crime of violence under the Guidelines and the definition of a violent felony under the ACCA are 'identical.'"⁴⁴  I thus apply the categorical approach to determine whether Gray's offenses qualify as crimes of violence under the mandatory Guidelines.⁴⁵

### 2. Gray's federal-bank-robbery conviction is a crime of violence.

Gray pleaded guilty to federal bank robbery under 18 U.S.C. § 2113(a) and (d), which requires that the defendant take property or money "by force or violence, or by intimidation" to be found guilty of the offense.⁴⁶  Gray focuses on the latter term, "intimidation," to argue that § 2113(a) can be violated by a defendant who did not *intend* to put someone in fear of physical injury.

But the Ninth Circuit held in *United States v. Selfa* that § 2113(a) qualifies as a crime of violence.⁴⁷  The court reasoned that "intimidation" in the context of § 2113(a) means that the defendant placed his victim not just in fear generally, but fear of "bodily harm"—in other words, a threat of "physical force against" his person.  Although Gray is right that the Supreme Court has handed down a number of decisions that complicate this area of law, the Ninth Circuit has since affirmed *Selfa*'s holding in various unpublished decisions.⁴⁸  In one of those cases, *United*

---

⁴³ *U.S. v. Caceres-Olla*, 738 F.3d 1051, 1054 (2013) (quoting *Descamps v. United States*, 570 U.S. 254, 260 (2013)).

⁴⁴ *Robinson*, 869 F.3d at 937 n.5 (citing *Ladwig*, 432 F.3d at 1005 n.9).

⁴⁵ *See U.S. v. Quintero-Junco*, 754 F.3d 746, 751 (9th Cir. 2014).

⁴⁶ The statute states: "(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; . . . shall be fined not more than $5,000 or imprisoned not more than twenty years, or both." 18 U.S.C. § 2113(a).

⁴⁷ *United States v. Selfa*, 918 F.2d 749, 751 (9th Cir. 1990) (holding that "persons convicted of robbing a bank 'by force and violence' and 'intimidation' under 18 U.S.C. § 2113(a) have been convicted of a 'crime of violence' within the meaning of Guideline Section 4B1.1").

⁴⁸ *See, e.g., United States v. Steppes*, 651 F. App'x 697, 698 (9th Cir. 2016) (unpublished); *United States v. Howard*, 650 F. App'x 466, 468 (th Cir. 2016) (holding that Hobbs Act robbery qualifies as a crime of violence under 18 U.S.C. § 924(c) by comparing it to federal bank robbery under § 2113(a) and relying on *Selfa*); *United States v. Pritchard*, 692 F. App'x 349, 351 (9th Cir. 2017) (noting that the Ninth Circuit has "twice held that armed bank robbery in violation of

*States v. Pritchard*, the Ninth Circuit explicitly rejected Gray's intent argument, holding that "a conviction under § 2113(a) is a general intent crime, and therefore requires that any 'intimidation' and threatened use of force be 'intentional.'"[49] While *Pritchard* is unpublished, I find its reasoning persuasive and likely to be embraced by the court in future published decisions, so I adopt it here.

### 3. Tennessee armed robbery is a crime of violence.

Gray contends that his 1980 and 1985 convictions for Tennessee armed robbery do not qualify as crimes of violence. But the Sixth Circuit has persuasively ruled that the Tennessee robbery statute, as interpreted by the Tennessee Supreme Court, qualifies as a crime of violence under the ACCA's force clause, and I adopt its reasoning in this case. In *United States v. Mitchell*, the Sixth Circuit explained that robbery in Tennessee "involves the 'felonious' (under the former language) and 'intentional' (under the present language) taking of property from the person or another 'by violence or putting the person in fear.'"[50] The Tennessee Supreme Court has interpreted "violence" as expressed in both versions of the statute as "physical force unlawfully exercised so as to injure, damage, or abuse."[51] It has also clarified that that "the 'fear constituting an element of robbery is a fear of bodily injury and of present personal peril from violence offered or impending."[52] With those interpretations in mind, the *Mitchell* Court held that "the element of violence contained in the robbery statute thus satisfies [the ACCA's] requirement of the 'use, attempted use, or threatened use of physical force.'"[53] The Sixth Circuit

---

§ 2113(a) qualifies as a crime of violence [and the defendant] fails to show that any intervening authority is 'clearly irreconcilable with' or has overruled these authorities.") (citations omitted).

[49] *Pritchard*, 692 F. App'x at 352.

[50] *United States v. Mitchell*, 743 F.3d 1054, 1059 (6th Cir. 2014).

[51] *State v. Fitz*, 19 S.W.3d 213, 214 (Tenn. 2000).

[52] *State v. Taylor*, 771 S.W.2d 387, 393 (Tenn. 1989).

[53] *Mitchell*, 743 F.3d at 1059.

has also affirmed post-*Johnson* that *Mitchell* is still good law.[54] With no Ninth Circuit authority to the contrary, I agree with the Sixth Circuit's determination and hold that Tennessee armed robbery is a crime of violence under the force clause.[55] Gray's 1980 and 1985 convictions for Tennessee armed robbery thus qualified him for career-offender sentencing under the Guidelines.

### 3. Harmless error

Gray contends that if I find only one of his prior offenses no longer qualifies as a crime of violence post-*Johnson*, then I must vacate his sentence because "the record is unclear as to which offenses the government relied on at the time of sentencing."[56] But his argument ignores the harmless-error analysis that the Ninth Circuit has embraced in *Johnson* cases.[57] Because I find that Gray's instant armed-robbery offense and his 1980 and 1985 convictions for Tennessee armed robbery are crimes of violence, Gray was not prejudiced by the sentencing judge's consideration of his other prior convictions, and any error was harmless.[58]

---

[54] *United States v. Priddy*, 808 F.3d 676, 686 (6th Cir. 2015), *abrogated on other grounds by United States v. Stitt*, 860 F.3d 854 (6th Cir. 2017) ("[E]ven in light of the Supreme Court's invalidation of the [ACCA's] residual clause, this Court's determination remains unchanged that under the categorical approach, robbery in Tennessee is a predicate offense under the use-of-force clause.").

[55] I've considered the Ninth Circuit's recent ruling in *United States v. Edling*, No. 16-10457 (9th Cir. June 8, 2018), which held that Nevada's robbery statute doesn't qualify as a crime of violence under the Guidelines. The *Edling* panel found that the statute allows conviction if a defendant harms or threatens harm to a person's *property*, which does not constitute a threat of physical injury to a *person* as required by the Guidelines' force clause. Because Tennessee's statute does require a threat of violence or fear of bodily injury to a person, not merely his property, *Edling* does not alter my analysis.

[56] ECF No. 48 at 3–4.

[57] *United States v. Geozos*, 870 F.3d 890, 897 (9th Cir. 2017) (citing *United States v. Montalvo*, 331 F.3d 1052, 1057–58 (9th Cir. 2003) (per curiam) ("In other words, are there three convictions that support an ACCA enhancement under one of the clauses of the ACCA that survived *Johnson* []? If so, then the *Johnson* [] error did not prejudice Defendant, and he is not entitled to relief.")).

[58] Recently, the Ninth Circuit held that Florida armed robbery is not a crime of violence under the ACCA. *See United States v. Geozos*, 870 F.3d 890, 901 (9th Cir. 2017). But that determination does not entitle Gray to relief. Although his criminal history boasts Florida-armed-robbery convictions, too, because his Tennessee armed-robbery priors qualify, I need not reach the Florida ones.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Barry Addison Gray's motion for reconsideration **[ECF No. 38] is GRANTED,** and his motion to vacate his sentence [**ECF No. 35] is DENIED.**

Dated: June 20, 2018

                                                                                     _____
                                                                             U.S. District Judge Jennifer A. Dorsey